UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.

No. 69 Civ. 200 (DNE).

United States District Court, S. D. New York.

May 5, 1980.

---

EDELSTEIN, District Judge.

On March 28, 1980, plaintiff told the court that (1) it has shown liability and the need for divestiture on the present record, that (2) it will in fact request structural relief if it prevails on the merits, because it believes that is the only way IBM's monopoly power can be dissipated, and that (3) it may also request injunctions to augment the divestiture. Plaintiff asked the court when "do we address the specific plan, that is to say, the details of the form of relief . . . . ?" Tr. 102,051. This memorandum will answer that question.[1]

Plaintiff argues for a separate submission of a relief plan after this court decides the issue of liability. Defendant has made a number of suggestions on the record as to the appropriate time for evidence to be submitted on relief,[2] but its "bottom line" is that "whatever case the Government is going to present on relief it ought to present now. I would be very strongly opposed to any deferral such as that sought again by [government counsel]." Tr. 102,054.

The question before the court is a discretionary one, concerning effective judicial administration. It is not a question of the court's power to require or the plaintiff's right to make a submission on relief.[3]

U. S. Dept. of Justice, Antitrust Division, for U. S. A.

Cravath, Swaine & Moore, New York City, for defendant, IBM.

1. This question is asked at a time plaintiff perceives that "we are very close indeed to the end of this trial." Tr. 99,087. Questions raised by plaintiff's motion of January 17, 1979, *see* note 3 *infra*, which relate to discovery directed to submission of a relief plan, are not ripe for consideration at this time. Plaintiff is not pursuing such discovery now, but has asked that its motion be "continue[d] . . . off-calendar. . . ."

2. In an earlier conference on this subject, IBM suggested deferring a relief submission until "after final review by the Supreme Court." Tr. 99,111. IBM also stated that it would be "satisfied" with a relief hearing "as soon as we finish our direct case, but prior to any entry of the Court's findings and conclusions." Tr. 99,-112. "As a third possibility" IBM offered to submit to a relief hearing following the court's decision on liability but in tandem with an expedited appeal of that decision to the Supreme Court. *Id.*

3. On January 17, 1979 plaintiff moved for an order "Directing and Governing Production of Documents Preparatory to Consideration of Relief." In answer to that motion, IBM argued that, the trial not having been bifurcated as to liability and relief, there may be no "separate trial" on relief and thus no discovery to that purpose. Because this argument touches on the plaintiff's present application to defer a relief submission until after decision on liability, the court necessarily considers it at this time.

It is not clear whether IBM continues to argue that the undoubted absence of a bifurcation order forecloses *any* submission or hearing on relief separate from the taking of evidence on liability. In conference, counsel reiterated that there has been no bifurcation providing for a separate relief hearing, and that the government "was" obligated to present its relief request, justification, and plan in its direct case. Tr. 99,111. However, he also conceded that some documents were "appropriately discoverable in connection with the relief hearing," if that hearing were to be held before decision on liability. Tr. 99,120. Moreover, at a later conference, counsel appeared to contest not the concept of a separate relief submission or hearing but only its deferral until after the court's decision. Tr. 102,054. These statements leave the court with an impression that IBM may

This court is convinced that submission of detailed relief plans, and hearings on such plans, should be had only after the court has decided the issue of liability and, of course, only if the court finds for the plaintiff. To submit plans before such a decision would run the risk of substantial wasted effort in at least three distinct eventualities: first, if this court finds for IBM on the merits; second, if this court finds for the plaintiff but the plans submitted before decision do not comport with the nature and scope of the violation found by the court, *see, e. g., United States v. United Shoe Machinery*, 110 F.Supp. 295, 348 (D.Mass. 1953), *aff'd*, 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954); and third, if this court finds for the plaintiff but the plans previously submitted are rendered obsolete by changes in the market or within IBM during this court's deliberations on liability.

have abandoned some portion of its opposition to the motion, although what portion that may be is unclear.

Rather than parse the statements of IBM counsel to ascertain his present position, the court will decide this point on the merits. If the plaintiff prevails, it becomes the court's "inescapable responsibility" to fashion a decree appropriate to "terminate the illegal monopoly, deny to the defendant the fruits of its statutory violation, and ensure that there remain no practices likely to result in monopolization in the future." *United States v. United Shoe Corp.*, 391 U.S. 244, 250, 88 S.Ct. 1496, 1500, 20 L.Ed.2d 562 (1968). The absence of a bifurca-tion order on relief does not foreclose the court now from deciding liability and calling for proposed orders and hearings thereon as necessary to discharge the responsibility prescribed by the Supreme Court. This procedure is hardly unusual or novel. Indeed, it tracks the procedure followed, apparently without objection, in previous non-bifurcated antitrust cases. *United States v. Ford Motor Co.*, 315 F.Supp. 372, 374 (E.D.Mich.1970), *aff'd*, 405 U.S. 562, 92 S.Ct. 1142, 31 L.Ed.2d 492 (1972); *Brown Shoe Co. v. United States*, 179 F.Supp. 721, 741–42 (E.D.Mo.1959), *aff'd*, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962).